FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

NOV 15 2007

U. S. DISTRICT COURT
E. DIST. OF MO.
ST. LOUIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| v. | ) No. |
| STEVEN HEINRICHS and TRACY WESTMORELAND, | ) 4:07CR00698 RWS |
| Defendants. | ) |

## INDICTMENT

### COUNT I
### (Conspiracy)

The Grand Jury charges that:

A. Introduction

1. At all relevant times, D. D., an individual known to the Grand Jury was engaged in the real estate business in St. Louis, Missouri within the Eastern District of Missouri.

2. At all relevant times, C.R. was engaged in the real estate business in St. Louis, Missouri within the Eastern District of Missouri as a mortgage broker and loan officer.

3. At all relevant times, defendant Steven Heinrichs ("Heinrichs") was a resident of St. Louis, Missouri within the Eastern District of Missouri.

4. At all relevant times, defendant Tracy Westmoreland ("Westmoreland") was a resident of St. Louis County within the Eastern District of Missouri and also resided in the Western District of Missouri.

5. At all relevant times, part of D.D.'s business included the sale of homes in the St. Louis area. D.D. specialized in "distressed" or "as is" residential properties whose owners were

generally interested in selling homes quickly and with little or no maintenance or improvements. Because of their special conditions, sellers were generally willing to sell "distressed" or "as is" properties at below market value.

6. This market of favorably priced real estate to which D.D. had access provided an opportunity. By matching distressed sellers with prospective real estate investors, D.D. and others exploited the difference between what a distressed seller was willing to take for a property and what a prospective investor, induced by special deals arranged by D.D. and others including the defendant, was willing to pay, i.e., the "spread."

B. The Conspiracy

7. Between on or about December 7, 2005 and the date of this indictment,

**STEVEN HEINRICHS, and
TRACY WESTMORELAND,**

the defendants herein, and others known and unknown to the Grand Jury including D.D. and C.R., did knowingly conspire, combine, confederate and agree with each other and others known and unknown to the Grand Jury to commit offenses against the United States, to wit:

    a.    bank fraud in violation of Title 18, United States Code Section 1344, by devising a scheme and artifice to defraud financial institutions of money by means of false pretenses and material misrepresentations of fact;

    b.    mail fraud in violation of Title 18, United States Code Section 1341, by devising a scheme and artifice to defraud others out of money and things of value by means of false and fraudulent pretenses, representations and promises and to use the Postal Service and interstate commercial carriers in furtherance and execution of said scheme; and

   c.  wire fraud in violation of Title 18, United States Code Section 1343, by devising a scheme and artifice to defraud others out of money and things of value by means of false and fraudulent pretenses, representations and promises and transmitting wire and radio communications in and affecting interstate or foreign commerce in furtherance of said scheme.

C. Manner and Means of the Conspiracy

8. It was part of the conspiracy that, in order to exploit the spread, D.D. and others would tell a seller of distressed property that he had found a buyer at a particular price. D.D. would then tell the buyer that he could buy that same property at a different, much higher price. D.D. and others would then alter the sales contract price to which the seller agreed, producing a spread. D.D. would use this spread to pay himself (either directly or through businesses he controlled), other conspirators including Heinrichs and Westmoreland and, usually, the buyers. Buyers were often convinced to buy properties by D.D.'s promise of extra cash at closing which the buyers, who planned to rent the properties, could use for maintenance expenses or to cover periods of vacancy.

9. It was part of the conspiracy that, in order to obtain financing for his buyers, D.D. and others made multiple material misstatements of facts throughout the loan application and financing process. Typically, buyers obtained a "stated income" loan and misstated, among other things, their assets, income, liabilities, and intention to occupy a property as a primary residence. D.D. and others, including defendants Heinrichs and Westmoreland, enlisted C.R., a loan officer and W.K, a real estate appraiser, to facilitate this process. C.R. would "back out" a buyer's income and assets from the amount to be financed. That is, he came up with financial representations to be made to financial institutions not based on reality but based upon what he

3

thought lenders would require to finance the amount of the transaction. W.K. would "max out" or inflate the value of properties to support D.D.'s sales price and would sometimes sign off on improvements as having been completed when they had not, and in some cases, would not be completed. In exchange for their participation, C.R. and W.K. received a steady stream of large fees and commissions which were larger than would be charged a typical customer.

10 It was part of the conspiracy that, in all, D.D. and the defendants arranged the sale of many properties in this way and, either personally or through companies they controlled, realized in excess of one million dollars through this scheme.

11. It was part of the conspiracy that defendants Heinrichs and Westmoreland identified distressed sellers as well as interested buyers and refer then to D.D. and C.R. to be organized according to the plan described above. In exchange for these referrals, Heinrichs and Westmoreland shared in the "spread" described above, often taking their cut through entities they controlled. For example, Heinrichs controlled and received money from these deals through an entity known as "Fat Boy Investments." Westmoreland controlled and received money from these deals through an entity known as "Lake Eyes." The money paid to these entities at the closing of these properties was pure profit and did not reflect any work actually performed on the subject properties.

12. It was part of the conspiracy that the defendants help would obtain financing for the foregoing transactions by making false statements about the borrower's finances and other material aspects of the transactions and causing such false statements to be made to financial institutions and that such false statements were a foreseeable part of the conspiracy.

4

13. It was part of the conspiracy that the defendants would use the United States Postal Service as well as interstate commercial carriers to transport materials used in the aforementioned real estate transactions between lenders, mortgage companies, title companies and borrowers and that the use of these instrumentalities was a foreseeable part of the conspiracy.

14. It was part of the conspiracy that the defendants transmitted radio and wire communications in interstate commerce in furtherance and execution of the conspiracy by, for example, exchanging interstate telephone calls as well as obtaining financing for the foregoing real estate transactions by means of interstate wiring of funds and that such wire and radio transmissions were a foreseeable part of the conspiracy.

D. Overt Acts

15. On or about April 28, 2006, the defendants committed an overt act in furtherance of the aforementioned conspiracy by causing a mortgage company to provide $160,000.00 in financing for the purchase of 2020 Wyoming St., St. Louis, Missouri within the Eastern District of Missouri.

16. On or about May 23, 2006, the defendants committed an overt act in furtherance of the aforementioned conspiracy by causing a mortgage company to provide $115,000.00 in financing for the purchase of 4606 Tennessee, St. Louis, Missouri within the Eastern District of Missouri.

17. On or about May 23, 2006, the defendants committed an overt act in furtherance of the aforementioned conspiracy by causing a mortgage company to provide $130,000.00 in financing for the purchase of 4043 Tholozan, St. Louis, Missouri within the Eastern District of Missouri.

All in violation of Title 18, United States Code, Section 371.

## COUNT II
## (Mail Fraud)

1. The allegations set forth in Count I are hereby realleged and incorporated by reference.

2. On or about May 23, 2006 in the Eastern District of Missouri, for the purpose of executing the foregoing scheme and artifice to defraud and attempting to do so,

### STEVEN HEINRICHS and
### TRACY WESTMORELAND,

the defendants herein, did knowingly and willfully cause to be sent and delivered by a commercial interstate carrier, an envelope containing material discussing the sale and closing of 4606 Tennessee, St. Louis, Missouri from St. Louis County, Missouri in the Eastern District of Missouri to Denver, Colorado.

In violation of Title 18, United States Code, Section 1341 and 2.

## COUNT III
## (Wire Fraud)

1. The allegations set forth in Count I are hereby realleged and incorporated by reference.

2. On or about June 15, 2006 in the Eastern District of Missouri, for the purpose of executing the foregoing scheme and artifice to defraud and attempting to do so,

### STEVEN HEINRICHS,

the defendant herein, did knowingly and willfully cause to be sent in interstate commerce a wire transmission, to wit: $116,894.07 to consummate the closing of 9011 South Broadway, St. Louis, Missouri from St. Louis County, Missouri in the Eastern District of Missouri.

In violation of Title 18, United States Code, Section 1343 and 2.

A TRUE BILL.


_____

FOREPERSON

CATHERINE L. HANAWAY
United States Attorney


_____

THOMAS C. ALBUS, #96250
Assistant United States Attorney